Karl P. Schlecht, Esq. (SBN 182294)
(Email: kschlecht@tresslerllp.com)
Bicvan Brown, Esq. (SBN 201897)
(Email: bbrown@tresslerllp.com)
Kristin A. Webb, Esq. (SBN 302740)
Email: kwebb@tresslerllp.com)
Cayla Whitley, Esq. (SBN 333497)
(Email: cwhitley@tresslerllp.com)
**TRESSLER LLP**
2 Park Plaza, Suite 1050
Irvine, CA 92614
Telephone: (949) 336-1200
Facsimile: (949) 752-0645

*Attorneys for Plaintiff,*
ALEXEI BERAN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ALEXEI BERAN,<br><br>Plaintiff,<br><br>v.<br><br>FLEXTECH INC., a Michigan Corporation doing business in California as FLEXTECH CONSULTING; FLEXTECH, INC., a Nevada Corporation; emids TECHNOLOGIES, INC., a Delaware corporation; CRAIG PFENT, an individual; and DOES 1 – 50, inclusive,<br><br>Defendants. | Case No. 8:22-cv-01205 CJC (JDEx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>(1) Sexual Harassment in Violation of FEHA;<br>(2) Gender Discrimination (Gov. Code § 12940);<br>(3) Failure to Prevent Harassment, Discrimination, and Retaliation (Gov. Code § 12940(k);<br>(4) Retaliation in Violation of FEHA;<br>(5) Whistleblower Retaliation (Cal. Lab. Codes §§ 1102.5, 1102.6);<br>(6) Promissory Estoppel;<br>(7) Unfair Business Practices (Bus. & Prof. Code §17200);<br>(8) Failure to Timely Pay Wages (Cal. Lab. Code §§ 202, 203);<br>(9) Inaccurate Wage Statements (Cal. Lab. Code § 226);<br>(10) Wrongful Termination in Violation of Public Policy;<br>(11) Intentional Infliction of Emotional Distress;<br>(12) Equal Pay Act & Fair Pay Act in Violation of Labor Code §§1197.5 and 432.3<br><br>**Complaint Filed: April 15, 2022**<br>**Notice of Removal: June 6, 2022**<br><br>**Jury Trial Demanded** |

## JURISDICTION AND VENUE

1.      On April 15, 2022, Plaintiff filed a Civil Complaint against Defendants entitled "ALEXEI BERAN, Plaintiff, v. FLEXTECH INC., a Michigan corporation doing business as FLEXTECH CONSULTING; FLEXTECH, INC. a Nevada Corporation; emids TECHNOLOGIES, INC., a Delaware corporation; and CRAIG PFENT, an individual; and DOES 1 – 50, inclusive, Defendants" in the Superior Court of California for the County of Orange, Case Number 30-2022-01255048-CU-OE-CJC (the "Complaint").

2.      Defendants FlexTech Inc. dba FlexTech Consulting; FlexTech, Inc.; emids Technologies, Inc.; and Craig Pfent (collectively referred to as "Defendants"), removed this action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California – Southern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on June 6, 2022.

3.      In support of such removal, Defendants stated: (1) there is complete diversity of citizenship between Plaintiff Alexei Beran ("Plaintiff"), a citizen of the State of California, and Defendants, citizens of the states of Delaware, Michigan, Nevada, and Tennessee; (2) the amount in controversy meets the jurisdictional requirement of exceeding $75,000; (3) this removal petition is timely filed; and, (4) all of the foregoing facts were true when Plaintiff filed the Complaint, and remain true now. (ECF Document 1).

4.      Plaintiff has exhausted her administrative remedies by the timely request of a Right-to-Sue notice from the California Department of Fair Employment and Housing within three years after the unlawful conduct occurred.

5.      This Court has jurisdiction over all Defendants because, based on

**FIRST AMENDED COMPLAINT**

information and belief, diversity jurisdiction exists and each party has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice.

6.    Venue is proper in this Court because, upon information and belief, one or more of the named Defendants reside, transact business, or have offices in Orange County, California and the acts and omissions alleged herein took place in Orange County, California.

7.    The parties stipulated that Plaintiff could file an amended complaint in this Court by July 29, 2022.  (ECF Document 19).

## THE PARTIES

8.    Plaintiff ALEXEI BERAN (hereinafter "Plaintiff" or "Beran") is an individual residing in County of Orange in the State of California, and was at all times relevant herein, employed in the County of Orange. The acts giving rise to Beran's claims occurred in the County of Orange.

9.    Defendant FLEXTECH INC. (hereinafter "FLEXTECH CONSULTING" or "Defendant Flextech Consulting"), upon information and belief, was a Michigan corporation, that moved to a Nevada corporation, and at all times relevant to this complaint was doing business within the State of California as FLEXTECH CONSULTING, in the County of Orange.

10.    Defendant FLEXTECH, INC. (hereinafter "FLEXTECH" or "Defendant Flextech"), was and is, upon information and belief, a Nevada corporation doing business within the State of California as FLEXTECH, INC., in the County of Orange.

11.     Defendant emids TECHNOLOGIES, INC., (hereinafter "emids" or "Defendant emids"), was and is, upon information and belief, a Delaware corporation doing business within the State of California as "emids," in the County of Orange.

12.     Defendant CRAIG PFENT, (hereinafter "Pfent") an individual, was upon information and belief, an individual residing in the County of Orange in the State of California, who at some time thereafter became an individual residing in the state of Nevada. Beran is informed and believes, and therefore alleges, that Pfent was the President and CEO of FLEXTECH/FLEXTECH CONSULTING and/or emids, an employee, servant, officer, and/or agent of FLEXTECH CONSULTANT, FLEXTECH, and/or emids. Based on his supervisory role over Beran during her employment, Pfent directly or indirectly employed and exercised control over the working conditions of Beran.

13.     Beran is informed and believes, and thereon alleges, that at all times relevant herein, Pfent was acting within the course and scope of his authority as an employee with the permission and consent of FLEXTECH, FLEXTECH CONSULTING, and/or emids.

14.     Plaintiff is unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1-50 inclusive but requests leave to amend and serve such fictitiously named Defendants pursuant to California Code of Civil Procedure § 474, once their names and capacities become known.

15.     Plaintiff is informed and believes, and thereon alleges, that DOES 1-50 are the partners, owners, shareholders or managers or employees of each named defendant and therefore, were acting on behalf of Defendants.

16.    FLEXTECH CONSULTING, FLEXTECH, emids, Pfent and DOES 1-50 will hereafter be collectively referred to as "Defendants."

17.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants are in some manner intentionally, negligently, or otherwise responsible for the acts, occurrences or transactions alleged herein.

18.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, all Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of Defendants were in accordance with and represent the official policy of Defendants.

19.    Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each Defendant sued herein (both named and DOE Defendants) was the employee, agent, servant, employer, joint venturer, joint employer, contractor, contractee, partner, division owner, subsidiary, division, alias, and/or alter ego of each of the remaining Defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, contract, ownership, subsidiary, alias and/or alter ego and with the authority, consent, approval, control, influence and ratification of each remaining Defendant sued herein.

20.    At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

//

**FIRST AMENDED COMPLAINT**

## GENERAL ALLEGATIONS

21.     Plaintiff worked for Defendants from approximately 2014 to approximately October 9, 2020. Plaintiff held the position of Vice President, Business Development from approximately July 2018 to approximately October 9, 2020.

22.     On approximately July 31, 2020, emids acquired FLEXTECH.

23.     From the beginning of her employment, PFENT promised Plaintiff that she would receive stock options.  Pfent also promised Plaintiff a significant payout if she stayed with FLEXTECH through the sale to another company. Pfent promised Plaintiff several amounts ranging from $500,000, then $750,000, then  up to $1,000,000.  The last promise Beran received was for a minimum of $750,000 and up to $1,000,000, plus stock options as part of her compensation plan in the sale to emids. Plaintiff relied upon these promises and continued her employment despite hostile working conditions. Even Saurabh from Emids discussed stock options with Beran on or About December 12, 2018, during a business lunch at Pasea.  The fact Beran was to receive stock options was consistent throughout all of the promises over the years.  The amount grew over the years according to Pfent and based on Plaintiff's tenure.

24.     Unfortunately, although she was promised a lucrative payout that made her job even more valuable to her, Plaintiff also suffered greatly during her employment. Throughout her employment with DEFENDANTS, Beran experienced consistent sexual harassment from Pfent, as well as discrimination based on her gender, and eventually, retaliation for complaining about his illegal behavior.

25.     Beran experienced sexual harassment while employed at Defendants.

Specifically, Pfent engaged in unwanted verbal conduct of a sexual nature. He also engaged in conduct that demonstrated gender-based animus. Below include brief email excerpts of the highly offensive, severe, pervasive, derogatory, and disparaging comments, and inappropriate verbal conduct, Beran was forced to endure while employed with Defendants. This is not an exhaustive list:

- "I don't think we should meet. I am in a really dark place right now. **I can't control my emotions and might take it out on you**." [Emphasis added] (3/27/19 email from Pfent to Beran)

- "My apologies to the team for making a major mistake in my life marrying her [Beran's mother] and **having it effect you personally**." [Emphasis added] (3/26/19 email from Pfent to entire leadership team at FlexTech, including Beran)

- "She [Beran's mother] is a **cunt**." [Emphasis added] (3/28/19 email from Pfent to Beran)

- "Not bad for 9 years and the **bitch** wants more … **Cunt**" [Emphasis added] (3/28/19 email from Pfent to Beran)

- "Fine. I can't see straight. Your mom wants you to **fuck** Ryan in the Mammoth condo but I can't **fuck** someone." [Emphasis added] (4/18/19 email from Pfent to Ms. Beran)

- "**Fucking** loser can't pay for child support" [Emphasis added] (2017 email from Pfent to the entire leadership team at FlexTech, regarding Beran's father.)

- "…I can't trust you to be a **fuckin'** leader." [Emphasis added] (2015 email from Pfent to Beran)

Case No. 8:22-cv-01205-CJC (JDEx)

**FIRST AMENDED COMPLAINT**

26.    Beran was forced to accept the unwanted severe and pervasive sexually harassing and gender discriminatory conduct if she wished to remain employed with Defendants, where she had a well-established career of seven years and a leadership position as Vice President.

27.    As early as 2015, there is evidence of Pfent's abusive language directly aimed at Plaintiff. Pfent also routinely shared the highly personal details of his divorce with Plaintiff's mother with the leadership team of FlexTech and emids, as evidenced by his March 26, 2019, email to the entire leadership team. The March 26, 2019 email, in its complete form, even states the details of the divorce, including the specific division of personal assets and child support. In order to maintain her employment, and as a result of promises of lucrative compensation after the emids deal closed, Beran had to accept not only direct unwanted conduct from Pfent but also had to accept a hostile working environment where her peers on the leadership team were aware of the hatred the President/CEO openly had for her own mother.

28.    Plaintiff also believes that Defendants, via its owners and leadership team, including and the human resources department, were aware of the sexually abusive environment, exemplified by the emails to the leadership team, and chose to ratify the conduct instead of stopping it. Defendants' supervisory employees intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign, and Plaintiff resigned because of these working conditions.

29.    Plaintiff complained numerous times about the sexual harassment and disparaging and derogatory remarks, including those regarding her mother, that were

**FIRST AMENDED COMPLAINT**

of a sexual nature, to no avail.

30. For many months before she resigned, Plaintiff retained hope that the harassment, discrimination, and retaliation would change because Pfent would sometimes behave more professionally for short periods of time, and because she believed that the sale of FLEXTECH to a larger company with "real" human resources department would give her more protection.  Plaintiff believed that at emids, although Pfent was to retain an advisory role, he would no longer be her direct report.

31.  Defendant Pfent was in a supervisory role over Plaintiff as the President and CEO of Defendants. Pfent used Plaintiff to negotiate the emids deal and promised a compensation package to her upon completion of the deal; Plaintiff endured abusive treatment, due to promises of lucrative compensation. Plaintiff was harmed in that she was negatively treated, including on the basis of her relationship with Defendant's soon-to-be ex-wife who was also Plaintiff's mother. Plaintiff ultimately resigned from her position due to Defendants' harassing and discriminatory treatment of her.

32.   Because Pfent moved the company to Nevada, to avoid California taxes, the sale to emids was delayed.  This caused Alexei to continue working in a hostile environment, under Pfent, even longer, until the anticipated relief of working at emids.

33.   The terms of Plaintiff's employment were made contingent on accepting Defendant's sexually harassing and abusive conduct. Plaintiff remained an employee of Defendants and it was necessary for her to communicate with Defendants regarding everyday work circumstances, such as the acquisition of the

**FIRST AMENDED COMPLAINT**

company by emids.

34.     Continued Harassment, Discrimination, and Retaliation: Harassment, discrimination, and retaliation continued throughout 2019 and 2020 in that Pfent stonewalled Beran, excluded her from meetings, denied her equal benefits to other executive team members, asserted she was not on the executive team, and upon information and belief, secured a contract and/or directed emids to exclude Alexei from being granted stock options, which emids ratified.  Pfent promised, then blocked Beran from receiving stock options, motivated by animus.  Pfent told Plaintiff that her peers, including employees with less experience at the company and/or less significantly less tenure as executives, got stock options, namely: Mark Kulak and Laura Schaumberg (who had recently been promoted to hold the same VP title as Plaintiff held for some time), and Ryker Henriksen (Pfent's son's friend who was a consultant at Flextech) were the 3 who received stock options.  Pfent had previously informed Plaintiff that he wanted her, the "future of the company" to receive stock options, as he thought it was a big incentive for her due to her age.

35.     On or about July 31, 2020, emids acquired FLEXTECH.

36.     Beran was performing work for emids, was reporting to emids supervisors on projects, attended emids trainings, and attended emids work meetings, including evening meetings while waiting for her employment contract and compensation plan from emids.

37. Unfortunately, Plaintiff's employment with DEFENDANTS after emids' buyout of FLEXTECH, was similarly poisoned by harassment, discrimination, and retaliation.  For example, emids' executive, Saurabh, told plaintiff that she wasn't getting stock because Pfent told them not to give it to her.  This decision was not

**FIRST AMENDED COMPLAINT**

really based on a legitimate business reason, it was motivated by animus.

38.    Plaintiff complained about DEFENDANTS breach of the promised compensation package, DEFENDANT's discriminatory and retaliatory claimed she was not on the leadership team, and the divorce-related and gendered animus motivating DEFENDANTS' treatment of PLAINTIFF.

39.    Upon information and belief, DEFENDANTS did not investigate Plaintiffs complaints.

40.    Rather, DEFENDANTS, retaliated against Plaintiff for making protected complaints about her wages, working conditions, and discrimination and harassment by not correcting the compensation offer, taking her employment offer off the table, putting it back on the table but being evasive and not offering revised documents, such that she worked for several weeks without a compensation plan.

41.    For well over a month, beginning on approximately August 4, 2020, Beran was provided inaccurate employment agreements that did not reflect her stock options or her bonus/commission structure. Beran was promised on multiple occasions that the employment agreement would be revised to cure these deficiencies, but Beran never received an employment agreement that properly reflected the agreed-upon terms.

42.    On or about August 7, 2020, Plaintiff received contracts regarding employment from emids, but the provisions of the contracts were not what Plaintiff discussed with Pfent, President and CEO of FlexTech. Among other things, the contracts failed to provide Plaintiff with stock options, and the monetary offer as a result of emids acquisition of FlexTech was significantly lower than what FlexTech previously negotiated with Plaintiff, despite Plaintiff having fulfilled all the terms of

the contract on her end. The terms of compensation were less than employee(s) of the opposite sex who were performing substantially similar work.

43. Compensation offered to Beran was less than promised, in retaliation for her complaints about Pfent's harassing conduct, in discrimination against her based on gender, in that male executives, including a consultant with less experience than Beran, were awarded stock options and greater base pay, where she was offered much less.

44. On or about August 18, 2020, Plaintiff provided redlined contracts to emids. Stacey Cannon, General Counsel at emids, **validated** the redlined changes and stated language would be created to reflect Plaintiff's bonus and commission structure. Despite this agreement communicated by Defendants' General Counsel, Defendants failed to deliver its promises, and as a result Plaintiff was harmed, not only by persistent hostile work environment sexual harassment and sex-based discrimination, but by the retaliatory acts including intentional breach of a contract via non-payment and unequal payment of monies owed and constructive termination.

45. Alexei complained to Pfent, to emids supervisors Saurabh and Mike Hollis, to emids General Counsel, and copied emids' Human Resources on some emails about compensation issues. Emids failed to investigate and correct the compensation issues and ignored Alexei's complaint that Pfent was discriminating, harassing, and retaliating against her based on gender and his animus from divorcing Beran's mother.

46. Defendants retaliated against Beran for her complaints by ignoring her requests for an accurate compensation agreement, by withdrawing her employment

**FIRST AMENDED COMPLAINT**

offer to emids, by allegedly reviving the offer when she again complained, and yet still not giving her a compensation agreement.

47.    Ultimately, Beran was forced to resign due to the hostile work environment and Defendants' failure to provide Beran with an accurate employment agreement and monies owed post-acquisition.

48.    After six weeks of Defendants' failure to deliver on its promises, on or about September 21, 2020, due to the continued retaliation, harassment, discrimination, and in light of emids complete failure to provide Plaintiff with items promised, along with severe and pervasive sexual harassment and unlawful sex-based discrimination and retaliatory conduct, Plaintiff was left with no other option but to resign and seek employment elsewhere. Defendants thus constructively wrongfully terminated her employment.

49.    DEFENDANTS were motivated by malice and further retaliated against Alexei by shortening the time on her last date of work from October 23, 2020, to October 9, 2020.

50.    To add insult to injury, upon exit from Defendants, according to the employee manual, Defendants offer 15 days of paid vacation. Plaintiff used approximately eight vacation days, leaving her with seven remaining days of vacation to be paid to Plaintiff as wages. Plaintiff should have been paid on approximately October 9, 2020, which was her last day of employment. Instead, Defendants paid Plaintiff grossly deficient amounts. To date, Plaintiff has not received an accurate itemized statement in writing showing an itemization as required by Labor Code § 226. Also, Defendants have failed to pay Plaintiff the full amount of vested vacation due including all applicable *interest* as wages at her final

rate. To date, Defendants have not paid Plaintiff bonuses owed. Without an accurate itemized written statement, Plaintiff is left guessing what the grossly deficient amounts paid refers to.

51.   Plaintiff had always been a loyal and dedicated employee. She always performed her job in a satisfactory manner. After her complaints, Defendants retaliated against her, pushed her out of her position as Vice President, and failed to pay her amounts due.

52.   At no time did Defendants investigate Plaintiff's complaints. At no time did Defendants discipline the openly abusive language of its leader/CEO Pfent clearly seen by all of the leadership team. Had Defendants investigated the complaints or disciplined its leader/CEO Pfent, Plaintiff would not have been forced to endure the harassment and discrimination.

53.   Beran's last day of work was approximately October 9, 2020. Throughout her employment and including her final day of work, Defendants engaged in numerous violations of the law.

54.   The conduct of Defendants has been so egregious, untruthful and in total disregard for Plaintiff's safety and welfare. As a result, Plaintiff continues to suffer severe emotional distress, anxiety, and stress. Moreover, Defendants' conduct and ratification of the harassment was done with malice and/or oppression which makes this case ripe for punitive damages.

## FIRST CAUSE OF ACTION

### Sexual Harassment in Violation of FEHA

### (Against All Defendants and DOES 1-50)

55.   Plaintiff incorporates by reference and realleges as if fully stated herein

the allegations set out above in this complaint.

56.    At all times mentioned in this complaint, California's Fair Employment and Housing Act ("FEHA"), was in full force and effect and was binding on Defendants. Pursuant to FEHA, an employer is prohibited from harassing and/or discriminating against an employee on the basis of sex. California Government Code § 12940 et seq.

57.    The harassing acts of Defendants mentioned in this Complaint against Plaintiff were unwelcome and were committed by Defendants in their capacity as Defendants' employees, agents or persons under Defendants' control and were committed within the scope of their employment.

58.    Defendants' conduct as mentioned in this Complaint, subjected Plaintiff to sexual harassment and intimidation all of which created an abusive and hostile work environment.

59.    In addition to Plaintiff's complaints, Defendants failed to take any corrective action to end those conditions. Defendants knew or should have known of the sexual harassment and Defendants failed to exercise reasonable care to prevent and promptly correct any future harassing behavior against Plaintiff. Therefore, Defendants, and each of them, are responsible for its employees' conduct.

60.    As a direct and proximate result of Defendants, and each of their actions, Plaintiff has suffered severe and serious emotional distress, physical injuries and inconvenience, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

61.    As a direct and proximate result of Defendants' conduct and failure to act, Plaintiff has suffered and continues to suffer actual damages, including losses in

**FIRST AMENDED COMPLAINT**

income, earnings, and other employment benefits, the exact amount of which is not yet known and to be shown according to proof.

62.    The conduct of the Defendants in sexually harassing Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would be subjected to a hostile and oppressive environment. Plaintiff is informed and believes, and based thereon alleges, that the sexual harassment alleged in this Complaint conducted by Defendants, and each of them, was done with an intent to cause injury to the Plaintiff. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

63.    Plaintiff has incurred and continues to incur legal expenses and attorney fees pursuant to <u>California Government Code</u> § 12965.

## <u>SECOND CAUSE OF ACTION</u>

### DISCRIMINATION

### (Against All Defendants and DOES 1 through 50)

64.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

65.    Govt. Code section 12940 states:

It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a)    or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition,

genetic information, marital status, <u>sex</u>, <u>gender</u>, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, <u>to refuse to</u> hire or <u>employ</u> the person or to refuse to select the person for a training program leading to employment, or to <u>bar or to discharge the person from employment</u> or from a training program leading to employment, or <u>to discriminate against the person in compensation or in terms, conditions, or privileges of employment</u>.

66.    At all times mentioned in this complaint, California's Fair Employment and Housing Act ("FEHA"), was in full force and effect and was binding on Defendants. Pursuant to FEHA, an employer is prohibited from discriminating against an employee on the basis of sex. <u>California Government Code § 12940</u> et seq.

67.    The discriminatory acts of Defendants mentioned in this Complaint against Plaintiff were committed by Defendants in their capacity as Defendants' employees, agents or persons under Defendants' control and were committed within the scope of their employment.

68.    Defendants' conduct as mentioned in this Complaint, subjected Plaintiff to sex-based discrimination, all of which created an abusive and hostile environment.

69.    In addition to Plaintiff's complaints over a period of months, Defendants failed to take any corrective action to end those conditions. Defendants knew or should have known of the discrimination and Defendants failed to exercise reasonable care to prevent and promptly correct any future discriminatory acts against Plaintiff. Therefore, Defendants, and each of them, are responsible for its

**FIRST AMENDED COMPLAINT**

employees' conduct.

70.     As a direct and proximate result of Defendants, and each of their actions, Plaintiff has suffered severe and serious emotional distress, physical injuries and inconvenience, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

71.     As a direct and proximate result of Defendants' conduct and failure to act, Plaintiff has suffered and continues to suffer actual damages, including losses in income, earnings, and other employment benefits, the exact amount of which is not yet known and to be shown according to proof.

72.     The conduct of the Defendants in unlawful discrimination against Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would be subjected to a hostile and oppressive environment. Plaintiff is informed and believes, and based thereon alleges, that the unlawful discrimination alleged in this Complaint conducted by Defendants, and each of them, was done with an intent to cause injury to the Plaintiff. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

73.     Plaintiff has incurred and continues to incur legal expenses and attorney fees pursuant to <u>California</u> <u>Government</u> <u>Code</u> § 12965.

///

///

///

# THIRD CAUSE OF ACTION

**Failure to Take All Reasonable Steps to Prevent Harassment,**

**Retaliation, and Discrimination in Violation of <u>Gov</u>. <u>Code</u> §12940(k) et seq.**

**(Against All Defendants and DOES 1 -50)**

74.     Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

75.     Defendants failed to take immediate and appropriate corrective action to prevent and remedy the harassment to which Plaintiff and other employees were subjected to. Specifically, Defendants failed to initially investigate and remedy any claims of sexual harassment and then retaliated against Plaintiff by constructively terminating her employment. Defendants were fully aware of the sexual harassment against Plaintiff. All complaints were ignored. Some of the abusive language exemplified in the email communications were emailed to the entire leadership team. Defendants had no controls in place for reporting the abuse conducted by its leader and CEO, who was Plaintiff's direct supervisor.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and continues suffer, personal injuries and severe and serious emotional distress, all to Plaintiff's damage in an amount to be shown according to proof.

77.     The conduct of Defendants in harassing Plaintiff because of her opposition to unlawful activity, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants, and each of them, that Plaintiff would suffer damages in the foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Defendants' conduct against Plaintiff was done with an intent to cause injury to the Plaintiff. As a

**FIRST AMENDED COMPLAINT**

consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California Government Code §§ 12965, 12970.

78.    Plaintiff has incurred and continues to incur legal expenses and attorney fees which she is entitled to recover pursuant to <u>California Government Code</u> § 12965.

**FOURTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF FEHA**

**(Against All Defendants and DOES 1 through 50)**

79.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

80.    Plaintiff engaged in a protected activity by complaining about the unlawful harassment that was occurring in the workplace. The harassment included the sexual comments among other things described herein above. Defendants, and each of them, acting at least partially in direct retaliation for Plaintiff complaining, failed to deliver on previously negotiated monies owed, and constructively terminated her.

81.    By the aforesaid acts and conduct of Defendants, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earnings capacity, and other pecuniary loss not presently ascertained for which Plaintiff will seek leave of court to amend when ascertained. Further, as a direct and legal result of the conduct of Defendants, as more fully noted above, Plaintiff has been caused to, and did, suffer and continue to suffer severe and permanent emotional and mental distress, physical injuries and inconvenience. The

exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

82.    The conduct of Defendants in retaliating against Plaintiff because of her opposition to unlawful activity, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants, and each of them, that Plaintiff would suffer damages in the foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Defendants' conduct against Plaintiff was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government* Code §§ 12965 & 12970.

83.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which she is entitled to recover pursuant to California *Government* Code § 12965.

## FIFTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF LABOR CODE §§1102.5, 1102.6

### (Against All Defendants and DOES 1 through 50)

84.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

85.    Labor Code section 1102.5(b) forbids an employer from retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to,

or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

86.    Defendants employed Plaintiff.

87.    Plaintiff engaged in a protected activity by complaining about the unlawful harassment, about retaliation and discrimination, about her wages,  and about the unequal pay in violation of the Equal Pay Act that was occurring in the workplace. The harassment included the sexual comments among other things described herein above. The unequal pay was for defendant's paying male employees more than female employees for substantially similar work. Plaintiff had reasonable cause to believe that the information she disclosed to Defendants constituted violations of the law.

88.    Plaintiff's disclosure of what Plaintiff reasonably believed to be a violation of federal and state law was a contributing factor in Defendants' failure to deliver on previously negotiated monies owed, and Defendants' decision to constructively terminate her.

89.    As a proximate result of aforementioned adverse employment actions by Defendants, Plaintiff has suffered the following losses including, but not limited to, loss of earnings and future earnings capacity, and other pecuniary loss not presently ascertained for which Plaintiff will seek leave of court to amend when ascertained. Further, as a direct and legal result of the conduct of Defendants, as more fully noted above, Plaintiff has been caused to, and did, suffer and continue to suffer severe and permanent emotional and mental distress, physical injuries and

inconvenience. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

90.    The conduct of Defendants in retaliating against Plaintiff because of her opposition to unlawful activity, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants, and each of them, that Plaintiff would suffer damages in the foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Defendants' conduct against Plaintiff was done with an intent to cause injury to Plaintiff.

91.    In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to punitive damages in an amount according to proof at the time of trial.

92.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial. Cal. Lab. Code § 1102.5 has specifically been amended to allow for attorneys' fees to a plaintiff who successfully brings a whistleblower claim against their employer.

## SIXTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

### (Against All Defendants and DOES 1 through 50)

93.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

94.    PFENT and FLEXTECH made a clear and unambiguous promise to PLAINTIFF that PLAINTIFF would receive stock options and at least $500,000, and up to $1,000,000 in payout from DEFENDANTS at the sale of FLEXTECH.

95.    DEFENDANTS should have reasonably expected to induce action or forbearance on the part of the PLAINTIFF and did induce such action or forbearance.

96.    PLAINTIFF reasonably and justifiably relied on said promises and put her trust in DEFENDANTS that they would fulfill their promises. As such, PLAINTIFF continued working for DEFENDANTS.

97.    DEFENDANTS did not perform its promise to provide PLAINTIFF with stock options and a payout of at least $500,000.

98.    PLAINTIFF was harmed by Defendants' failure to pay monies owed and PLAINTIFF's reliance on Defendants' promises was a substantial factor in causing PLAINTIFF harm as alleged herein.

99.    Injustice can only be avoided by enforcement of the promise.

<u>**SEVENTH CAUSE OF ACTION**</u>

**FAILURE TO TIMELY PAY WAGES**

**(Against All Defendants and DOES 1 through 50)**

100.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

101.    Labor Code § 203 states the following:

(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment

**FIRST AMENDED COMPLAINT**

when fully tendered to them, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which the employee so avoids payment.

(b) Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

102.    Defendants constructively discharged Plaintiff on or around October 9, 2020.

103.    To date, Defendants willfully failed to pay Plaintiff in accordance with Labor Code section 203, for bonuses and other earned wages, including **interest** and **penalties** owed.

104.    Plaintiff has not secreted or absented herself to avoid payment. Plaintiff has not refused to receive the payment, because it has not been fully tendered to her.

105.    Since her last day was on or around October 9, 2020, she is within the statute of limitations.

106.    Plaintiff is entitled to an award of costs and reasonable attorney's fees for Defendants' failure to pay wages owed.

## EIGHTH CAUSE OF ACTION

### INACCURATE WAGE STATEMENTS

### (Against All Defendants and DOES 1 through 50)

107.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

///

///

108.    Labor Code § 226 states the following:

(a)     An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing

1. Gross wages earned,

2. Total hours worked by the employee, except as provided in subdivision (j),

3. The number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,

4. All deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,

5. Net wages earned,

6. The inclusive dates of the period for which the employee is paid,

7. The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number,

8. The name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and

9. All applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the

employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

In terms of damages, an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

108.    Defendants knowingly and intentionally failed to comply with subdivision (a), and Plaintiff is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

## <u>NINTH CAUSE OF ACTION</u>

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against All Defendants and DOES 1 through 50)

109.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

Case No. 8:22-cv-01205-CJC (JDEx)

**FIRST AMENDED COMPLAINT**

110.   At all times herein mentioned, the following statutes were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding upon DEFENDANTS, and each of them, at the time of PLAINTIFF'S employment and termination:

**Labor Code § 1102.5 prohibits retaliation for complaints about illegalities in the workplace;**

**Labor Code § 232.5 prohibits employer's sanctions against employee disclosure of working conditions;**

**Labor Code § 1197.5 and 432.3 Require Equal Pay;**

**Gov Code § 12940 prohibits Harassment, Discrimination, and Retaliation under FEHA;**

111. DEFENDANT wrongfully constructively terminated PLAINTIFF in violation of public polices of the statutes listed above when DEFENDANTS retaliated against Plaintiff based on legally protected complaints, caused intolerable and illegal working conditions, and failed to prevent or correct violations of the above protections for employees, applicable to PLAINTIFF.

112.   Plaintiff's termination was also wrongful in that Defendants, through Defendants' supervisory employees, intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign.

113.   Plaintiff resigned because of these working conditions.

114.   As a direct and proximate result of Defendants, and each of their actions, Plaintiff has suffered severe and serious emotional distress, physical injuries

and inconvenience, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

115.    As a direct and proximate result of Defendants' conduct and failure to act, Plaintiff has suffered and continues to suffer actual damages, including losses in income, earnings, and other employment benefits, the exact amount of which is not yet known and to be shown according to proof.

116.    The conduct of the Defendants in its constructive discharge subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would be subjected to an unjust termination. Plaintiff is informed and believes, and based thereon alleges, that the wrongful termination alleged in this Complaint conducted by Defendants, and each of them, was done with an intent to cause injury to the Plaintiff. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

117.    Plaintiff has incurred and continues to incur legal expenses and attorney fees pursuant to <u>California Government Code</u> § 12965 and Labor Code sections 1102.5 and 1102.6.

## **TENTH CAUSE OF ACTION**

### **UNFAIR COMPETITION UNDER CALIFORNIA**

### **BUSINESS & PROFESSIONS CODE SECTIONS 17200, et seq.**

### **(Against All Defendants and DOES 1 through 50)**

118.    Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

119.    California Business & Profession Code sections 17200, et seq. prohibits

unfair, unlawful, and fraudulent business practices and acts. As described more fully above, Defendants engaged in unfair, unlawful, and fraudulent business practices by failure to timely pay wages and failure to provide accurate wage statements.

120.  As a direct and proximate result of Defendants' unethical and fraudulent conduct, Defendants have been unjustly enriched and Plaintiff is entitled the amount by which Defendants have been unjustly enriched, plus interest at the legal rate, attorneys' fees, statutory penalties, preliminary and permanent injunctive relief, and such other and further relief as may be just and equitable.

## ELEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants and DOES 1 through 50)

121.  Plaintiff incorporates by reference and realleges as if fully stated herein the allegations set out above in the preceding paragraphs.

122.  Defendants via its President and CEO engaged in unwanted verbal conduct of a sexual nature. Specifically, Defendant Pfent used the word "bitch" and "cunt" in at least two known emails to Plaintiff: "She is a cunt" (3/28/19 email from Pfent to Beran) and "Not bad for 9 years and bitch wants more…Cunt."

123.  These are examples of statements that were intended to harm Plaintiff's profession and occupation, and they eventually did so, causing a hostile and abusive workplace as a result of such unwelcome and profane language.

124.  As a proximate result of Defendants' above actions, Plaintiff has lost her job, suffered loss to her reputation and potential business opportunities, all to his general damages.

125.   Moreover, as alleged herein, Defendants engaged in extreme and outrageous conduct against Plaintiff, including but not limited to, harassment, discrimination, and retaliation against Plaintiff including because Defendant Pfent was going through a divorce with Plaintiff's mother, wrongfully terminated her, and disseminating false information to the leadership team, Plaintiff's co-workers, and employees of Defendants.

126.   Defendants knowingly and intentionally caused or acted in reckless disregard of the probability of emotional distress to Plaintiff.

127.   Defendants' conduct proximately caused, and continues to cause, Plaintiff severe emotional suffering and distress including mental anguish, outrage, frustration, severe anxiety about her future, fear of harm of employability in the industry, anxiety over damage to her reputation, embarrassment among friends and colleagues, and disruption of personal life. Plaintiff is entitled to compensatory damages for these losses and demands an award of compensatory damages in an amount according to proof at trial.

128.   The conduct of the Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would be subjected to the above-described emotional suffering and distress. Plaintiff is informed and believes, and based thereon alleges, that the actions alleged in this Complaint conducted by Defendants, and each of them, was done with an intent to cause injury to the Plaintiff. As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

## TWELFTH CAUSE OF ACTION

### CALIFORNIA EQUAL PAY ACT AND CALIFORNIA FAIR PAY ACT

### (Labor Code section 1197.5 and 432.3)

### (Against All Defendants and DOES 1 through 50)

129. The California Equal Pay Act has prohibited an employer from paying its employees less than employees of the opposite sex for equal work. The 2015 California Pay Act strengthened the Equal Pay act by requiring equal pay for employees who perform substantially similar work, which viewed as a composite of skill, effort, and responsibility. Defendants are employers covered by the Equal Pay Acts.

130. The California Pay Act made it more difficult for employers to justify inequities in pay through the "bona fide factor other than sex" defense, ensured that any legitimate factors relied upon by the employer for pay inequities are applied reasonably and account for the entire pay difference, stated that retaliation against employees who seek to enforce the law is illegal, and making it illegal for employers to prohibit employees from discussing or inquiring about their co-workers' wages.

131. The work that Plaintiff performed was substantially similar work to colleagues of the opposite sex, in that the work was mostly similar in skill, effort, responsibility, and under similar working conditions. Yet, Defendants failed to pay her equally to colleagues of the opposite sex, despite mostly similar skill, effort, responsibility. There were no bona fide factors other than sex, race, and/or ethnicity.

132. Plaintiff is entitled to recover the difference in wages, interest, an equal amount as liquidated damages, and attorney's fees and costs.

**FIRST AMENDED COMPLAINT**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.      For general damages, according to proof;

2.      For special damages, according to proof;

3.      For loss of earnings, difference in wages, interest, and an equal amount as liquidated damages, according to proof;

4.      For attorneys' fees, according to proof;

5.      For penalties pursuant to applicable labor code statutes;

6.      For prejudgment interest, according to proof;

7.      For punitive and exemplary damages, according to proof;

8.      For costs of suit incurred herein;

9.      For restitution and equitable remedies pursuant to claims for Promissory Estoppel and for Unfair Business Practices; and

10.     For such other and further relief as the Court may deem just.

DATED: July 29, 2022          **TRESSLER LLP**

By: _____

Karl P. Schlecht
Bicvan T. Brown
Kristin A. Webb
Cayla Whitley
*Attorneys for Plaintiff,*
Alexei Beran

///

///

///

1

## <u>REQUEST FOR JURY TRIAL</u>

2

Plaintiff requests a trial by jury.

3

4    DATED: July 29, 2022              **TRESSLER LLP**

5

6                                        By: _____

7                                            Karl P. Schlecht

8                                            Bicvan T. Brown
                                             Kristin A. Webb
9                                            Cayla Whitley
                                             *Attorneys for Plaintiff,*
10                                           Alexei Beran

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

**PROOF OF SERVICE**
*Alexei Beran v. FlexTech Inc., a Michigan Corporation*
*doing business in California as FlexTech Consulting, et al.*
Case No. 8:22-cv-01205 CJC (JDEx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made.  My business address is 2 Park Plaza, Suite 1050, Irvine, California 92614.

On July 29, 2022, I served the following document(s):

**FIRST AMENDED COMPLAINT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☐   **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Tressler LLC's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐   **BY MAIL:**  I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at 2 Park Plaza, Suite 1050, Irvine, California 92614.

☐   **BY OVERNIGHT DELIVERY:**  I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Tressler LLC, Irvine, California.  I am readily familiar with Tressler LLC's practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐   **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐   **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐   the written confirmation of counsel in this action:

☐   [Federal Court] the written confirmation of counsel in this action and order of the court:

☒   **BY CM/ECF:**   With the Clerk of the United States District Court of California, using the CM/ECF System.  The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☒   **(Federal)**   I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐   **(Federal)**   I declare that I am a **member** of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 29, 2022, at Costa Mesa, California.

Mildred Dardis

Case No. 8:22-cv-01205-CJC (JDEx)

**FIRST AMENDED COMPLAINT**

1
2
3

### SERVICE LIST
*Alexei Beran v. FlexTech Inc., a Michigan Corporation*
*doing business in California as FlexTech Consulting, et al.*
Case No. 8:22-cv-01205 CJC (JDEx)

4
5
6
7
8
9

| Vince M. Verde | *Attorneys for Defendants* |
| David A. Garcia | FLEXTECH INC., a Michigan |
| Blair T. Troy | Corporation doing business in |
| OGLETREE, DEAKINS, NASH, | California as FLEXTECH |
| SMOAK & STEWART, P.C. | CONSULTING; FLEXTECH, INC., a |
| Park Tower, Fifteenth Floor | Nevada Corporation; emids |
| 695 Town Center Drive | TECHNOLOGIES, INC., a Delaware |
| Costa Mesa, CA  92626 | corporation; CRAIG PFENT, an |
| Email:  vince.verde@ogletree.com | individual |
| david.garcia@ogletree.com | |
| blair.troy@ogletree.com | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST AMENDED COMPLAINT**